OPINION
{¶ 1} Edward Lamar Griffin was found guilty by a jury in the Montgomery County Court of Common Pleas of aggravated burglary, in violation of R.C. 2911.11(A)(1). Griffin appeals from his conviction.
 {¶ 2} The evidence at trial established the following facts.
 {¶ 3} Griffin and Denise Bailey met in February 2003. Shortly thereafter, Griffin began living with Bailey and her three children on Greenbrook in Trotwood. While Griffin and Bailey lived together, Griffin had verbal confrontations with Bailey's ex-husband, Marvan Gordon. In July 2003, Griffin and Gordon had a physical altercation. Although Griffin was apparently the instigator, Griffin was stabbed by Gordon with a screwdriver. On September 17, 2003, Bailey moved to 5010 Laguna Road with Griffin's help. At that time, Griffin and Bailey ended their relationship, and Griffin did not move to Bailey's Laguna residence. However, they considered getting back together.
 {¶ 4} On September 29, 2003, Bailey had a mastectomy and reconstructive surgery related to breast cancer. Griffin visited Bailey at the hospital daily. While Bailey was hospitalized, Gordon stayed at Bailey's home to care for the children. Bailey returned home on October 2, 2003, a day earlier than expected. She agreed that Gordon would remain at her home that night so that he could tend to the children in the morning. Although Griffin had visited with Bailey that day, he was not aware that Gordon would be spending another night at Bailey's home.
 {¶ 5} In the early hours of October 3, 2003, Griffin attempted to contact Bailey by telephone. When Bailey failed to answer his repeated calls, Griffin went to Bailey's home and repeatedly rang the doorbell. At approximately 12:30 a.m., Gordon looked out the window and observed Griffin walking down the steps from the front door to the driveway. Believing that Griffin might vandalize his car due to animosity between the two men, Gordon woke Bailey, told her that he had seen Griffin outside, and suggested that they call the police. Gordon dialed 911.
 {¶ 6} Griffin began to bang on the front door. In response, Gordon ran to the front door and attempted to secure the door with his body. Bailey remained in her bedroom and spoke with the 911 operator. Gordon informed Griffin that he had already called 911.
 {¶ 7} Griffin went to the back door of the residence and attempted to enter through that door. Gordon again braced himself against the door. Gordon then told Griffin that he had a gun, although Gordon testified that he was bluffing in the hope that Griffin would "stop kickin' the door and tryin' to get inside." Griffin continued to pound on the back door, eventually causing the window to fall out and the door to open. Gordon retreated to the bathroom. Griffin grabbed a knife from a butcher block in the kitchen and proceeded toward the bathroom. Griffin testified that he believed that Gordon may have been trying to retrieve his gun.
 {¶ 8} According to Bailey's son, Andrew, Griffin initially went into Bailey's bedroom and yelled "You lied to me" at her. Andrew testified that Griffin then went to the bathroom door and began to kick it. Griffin testified that he went directly from the kitchen to the bathroom. Griffin eventually kicked in the bathroom door on top of Gordon, who was hiding inside. Gordon pushed Griffin into the hallway wall with the bathroom door between them. By this time, Bailey had retrieved a stun baton from her closet and was waving it toward Griffin. Griffin testified that this was the first time that he saw Bailey and learned that she was not in danger or injured. At this juncture, the Trotwood police arrived and arrested Griffin.
 {¶ 9} Griffin asserted that he had acted in self-defense and in the defense of Bailey. He indicated that he was aware that Gordon was subject to a protection order that prohibited Gordon from being near Bailey, and that he was afraid that Gordon may have injured Bailey.
 {¶ 10} On October 3, 2003, Griffin was charged with aggravated burglary, in violation of R.C. 2911.11(A)(1), and felonious assault, in violation of R.C. 2903.11(A)(2). On October 24, 2003, he was indicted for two counts of aggravated burglary, in violation of R.C. 2911.11(A)(1) and (A)(2), and two counts of felonious assault, in violation of R.C.2903.11(A)(1) and (A)(2).
 {¶ 11} In January 2004, Griffin was tried for one count of felonious assault and one count of aggravated burglary, in violation of R.C.2911.11(A)(1). The state nolled the additional felonious assault and aggravated burglary counts. On January 28, 2004, the jury acquitted Griffin of felonious assault. However, it could not reach a verdict on the aggravated burglary charge. Consequently, the court declared a mistrial and referred the case for further proceedings. In May 2004, Griffin was again tried for aggravated burglary. After a reasonable time for deliberations, the jury could not reach a verdict and the court again declared a mistrial.
 {¶ 12} On July 15-17, 2004, Griffin was tried for aggravated burglary for a third time. He was found guilty by the jury, and the court sentenced him to three years of imprisonment.
 {¶ 13} Griffin raises eleven assignments of error on appeal.
 {¶ 14} I. "THE COURT ERRED TO APPELLANT'S PREJUDICE IN PROVIDING THE JURY WITH AN INCOMPLETE JURY INSTRUCTION AND IN OVERRULING DEFENSE COUNSEL'S OBJECTION TO THE STATE'S PREJUDICIAL ARGUMENT IN THIS REGARD."
 {¶ 15} In his first assignment of error, Griffin claims that the trial court erred when it failed to give an instruction on self-defense involving the use of non-deadly force. He asserts that he was "entitled to a jury instruction that did not require that he reasonably fear that he was in imminent danger of death or great bodily harm." Although not explicitly stated, Griffin also appears to challenge the trial court's failure to instruct the jury that he had no duty to retreat when using non-deadly force.
 {¶ 16} "The general rule in Ohio regarding special instructions in a criminal case is that if the requested instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge." State v. Boulabeiz (1994),92 Ohio App.3d 238, 241, 634 N.E.2d 700; State v. Perryman (1976),49 Ohio St.2d 14, 29, 358 N.E.2d 1040 (vacating, in part, on other grounds). Thus, if there is sufficient evidence on the issue of self-defense involving non-deadly force in an aggravated burglary case, the trial court must instruct the jury on that defense.[1] State v.Ervin (1991), 75 Ohio App.3d 275, 279, 599 N.E.2d 366.
 {¶ 17} In order to establish that the trial court's failure to provide a non-deadly force instruction was reversible error, Griffin must make a two-part showing. "First, he must show that the trial court's refusal to give a proposed jury instruction was an abuse of discretion; that is, the refusal was arbitrary, unreasonable, or unconscionable." Jaworowski v.Med. Radiation Consultants (1991), 71 Ohio App.3d 320, 327-28,594 N.E.2d 9. Second, Griffin must demonstrate "that he was prejudiced by the court's refusal to give the proposed instruction. In this connection we note that prejudicial error occurs only if the alleged instructional flaw cripples the entire jury charge." Id.
 {¶ 18} As instructed by the court, in order for a defendant to establish self-defense against danger of death or great bodily harm, he must prove by a preponderance of the evidence (1) that he was not at fault in creating the situation giving rise to the altercation, (2) that he had a bona fide belief that he was in immediate danger of bodily harm and that his only means of escape from such danger was the use of force, and (3) that he did not violate any duty to retreat or to avoid the danger. See 4 Ohio Jury Instructions, Section 411.31; State v. Jackson
(1986), 22 Ohio St.3d 281, 284, 490 N.E.2d 893. In contrast, the non-deadly force instruction requires a defendant to establish (1) that the defendant was not at fault in creating the situation giving rise to the altercation and (2) that he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm. See 4 Ohio Jury Instructions, Section 411.33; State v. Hansen, Athens App. No. 01CA15, 2002-Ohio-6135, ¶ 24.
 {¶ 19} Griffin asserts that he did not use deadly force and thus a belief that he was in "imminent danger of death or great bodily harm" was not required. Deadly force is defined as "any force that carries a substantial risk that it will proximately result in the death of any person." R.C. 2901.01(A)(2).
 {¶ 20} In the present case, there is no question as to whether deadly force was used by Griffin. Griffin testified that he had grabbed a knife from the kitchen upon entering Bailey's home and that he was armed with the knife when he followed Gordon to the bathroom and broke down that door. Although Griffin testified that he had armed himself with the knife only to protect himself and there is no evidence that Griffin cut or stabbed Gordon with that knife, Gordon testified that he had seen Griffin with the knife and that he could see Griffin "making gestures" and trying to stab at the door while they were fighting in the hallway. Bailey also admitted that, in prior statements, she had indicated that Griffin had swung the knife at Gordon. Upon review of the record, Griffin's actions can only be construed as creating a "substantial risk" that Gordon would suffer death. Accordingly, the trial court did not err when it failed to instruct the injury on self-defense involving non-deadly force.
 {¶ 21} The first assignment of error is overruled.
 {¶ 22} II. "THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTION TO STATE FOUR UNDERLYING CHARGES WITH RESPECT TO THE AGGRAVATED BURGLARY CHARGE WITHOUT PROVIDING A LIMITING INSTRUCTION."
 {¶ 23} In his second assignment of error, Griffin claims that his due process rights were violated by the trial court's failure to designate a particular underlying offense for the aggravated burglary charge. Griffin argues that "[t]he fact that four separate underlying offenses were charged in the absence of a unanimity instruction prejudiced [him], because the jurors, as a group, might find [him] guilty without reaching a consensus as to which underlying crime was intended."
 {¶ 24} R.C. 2911.11(A)(1) reads:
 {¶ 25} "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * *any criminal offense, if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]" (Emphasis added).
 {¶ 26} The jury was instructed that the state had alleged that Griffin had the purpose to commit menacing upon Marvan Gordon and/or Denise Bailey and/or assault upon Marvan Gordon and/or criminal damaging upon the property and/or vandalism upon the property. The court defined each of the offenses for the jury. The jury was also instructed that, "whether your Verdict is Guilty or Not Guilty, it must be a unanimous Verdict, all twelve of you must agree upon that Verdict."
 {¶ 27} As stated in State v. Johnson (1989), 46 Ohio St.3d 96,545 N.E.2d 636:
 {¶ 28} "[T]he prevailing rule is, `a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability.'
 {¶ 29} "However, if a single count can be divided into two or more `distinct conceptual groupings,' the jury must be instructed specifically that it must unanimously conclude that the defendant committed acts falling within one such grouping in order to reach a guilty verdict." Id. at 104.
 {¶ 30} We are inclined to agree with Griffin that menacing and assault are a distinct conceptual grouping from criminal damaging and vandalism. Thus, the trial court should have instructed the jury that it had to agree unanimously that the state had established that Griffin had the purpose to commit either of these conceptual groups.
 {¶ 31} The state asserts that Griffin did not request a special unanimity instruction pertaining to the alternative underlying offenses, nor did he object to the instructions as given by the court. During early discussions regarding the preparation of jury instructions, Griffin expressed disagreement with the state's position that the jurors need not agree upon a particular underlying crime in order to convict Griffin. The court expressed "some concern" about the state's approach, but indicated that it would read the case law and prepare the first draft of the jury instructions. Griffin did not further object to the inclusion of four underlying offenses in the jury instructions. The state thus contends, and we agree, that Griffin has waived his argument absent plain error.
 {¶ 32} The failure to provide a limiting instruction does not rise to the level of plain error. The court properly issued a general unanimity instruction, and there was ample evidence to support a guilty verdict based on at least one of the underlying offenses. See State v. West,
Cuyahoga App. No. 82579, 2003-Ohio-7067.
 {¶ 33} The second assignment of error is overruled.
 {¶ 34} III. "THE TRIAL COURT ERRED IN DECLARING DENISE BAILEY TO BE A STATE'S WITNESS."
 {¶ 35} In his third assignment of error, Griffin claims that the trial court erred when it designated Bailey as a "state's witness" and permitted the prosecutor to cross-examine her. Griffin argues that the state should not have been permitted to cross-examine Bailey — its own witness — absent a showing of surprise.
 {¶ 36} Although the court ruled that it would "designate [Bailey] as a State's Witness and allow the Cross Examination" by the state, it is apparent from the record that the court intended to designate her as a court's witness. During the bench conference that preceded the court's ruling, the state requested that the court declare Bailey a court's witness and offered to lay a foundation for the court to do so. The court quoted Evid.R. 614(A), and it agreed with the prosecution that Bailey had been declared a court's witness in previous trials and that it could be done at this time. Due to Bailey's continuing emotional involvement with Griffin, the court permitted the state to continue its cross-examination of Bailey. In a subsequent bench conference, the court reiterated that it had allowed the state to cross-examine Bailey pursuant to Evid.R. 614. Considering the context of the court's ruling and the record as a whole, the court clearly intended for Bailey to be treated as a court's witness and not as a state's witness. Thus, we construe Griffin's third assignment of error to be that the court erred when it designated Bailey as a court's witness and permitted cross-examination by the state.
 {¶ 37} Evid.R. 614(A) provides: "The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." "A trial court's decision to declare a witness a court's witness will not be disturbed absent an abuse of discretion. See State v. Adams (1980),62 Ohio St.2d 151, 158, 16 O.O.3d 169, 404 N.E.2d 144 (affirming trial court's decision to declare witness a court's witness where she had lived with defendant and gave several conflicting statements about the crime). The State may cross-examine a court's witness without first showing surprise or affirmative damage, as normally required by Evid.R. 607.State v. Apanovitch (1987), 33 Ohio St.3d 19, 22, 514 N.E.2d 394, citingState v. Dacons (1982), 5 Ohio App.3d 112, 5 OBR 227, 449 N.E.2d 507."State v. Finley (June 19, 1998), Clark App No. 96-CA-30.
 {¶ 38} Upon review of the record, we find no abuse of discretion in the trial court's designation of Bailey as a court's witness, pursuant to Evid.R. 614. Moreover, because she was designated a court's witness, the state was not required to demonstrate surprise. Griffin's argument is without merit.
 {¶ 39} The third assignment of error is overruled.
 {¶ 40} IV. "The court erred in failing to grant a mistrial and in permitting the state to reopen its case."
 {¶ 41} In his fourth assignment of error, Griffin contends that the trial court erred when it failed to grant a mistrial upon the parties' discovery that the state had been arguing the wrong legal theory. Griffin also claims that the trial court erred when it permitted the state to reopen its direct examination of Bailey.
 {¶ 42} "When considering a motion for mistrial, the trial court must determine whether the substantial rights of the accused have been adversely affected. A court may grant a mistrial when a fair trial is no longer possible. Great deference is afforded to a trial court's decision regarding a motion for mistrial and the court's ruling will be reversed only upon the showing of an abuse of discretion." State v. Tate, Summit App. No. 21943, 2005-Ohio-2156, ¶ 8 (citations omitted).
 {¶ 43} Here, the state indicated during voir dire, opening statements, and early discussions regarding the jury instructions that it was proceeding on the legal theory that Griffin had committed aggravated burglary while armed with a deadly weapon, in violation of R.C.2911.11(A)(2). During discussions following the completion of the first day of trial, defense counsel noted that this count had been orally dismissed by the state in January 2004. Although no dismissal entry had been filed, the court expressed concern that double jeopardy had attached to that count. The court thus agreed to permit the state to proceed with the trial under R.C. 2911.11(A)(1).
 {¶ 44} Griffin objected and requested a mistrial. The court overruled Griffin's motion, reasoning that the statements made by the attorneys during jury selection and opening statements were not evidence and that there was evidence in support of the theory that Griffin had committed aggravated burglary with the aggravated circumstance being that he had caused, attempted to cause, or threatened to cause physical harm to Gordon. The court also gave the following instruction to the jury:
 {¶ 45} "Last night after all of you left, the attorneys and I had a discussion concerning several legal issues involved in this case. As a result of these discussions, and without assigning blame to anyone, it has come to our attention — it has been concluded that the aggravated circumstance discussed during the Jury selection process and also during Opening Statements was incorrect. The aggravated circumstance discussed, again, during Jury selection and also during Opening Statement, was that Mr. Griffin allegedly committed the crime of Aggravated Burglary while armed with a deadly weapon. Instead, the aggravating circumstance you will be asked to consider when it comes time to deliberate to a Verdict in this case is that Mr. Griffin allegedly committed the crime of Aggravated Burglary and that Mr. Griffin caused, attempted to cause, or threatened to cause physical harm to Marvan Gordon.
 {¶ 46} "Though the theory in the case is somewhat different, the evidence you have already heard is to be evaluated in the fashion that we have already discussed. Additionally, I will further discuss how you are to evaluate evidence at the end of the case when I give you the final legal Instructions that you will use to come to a Verdict in this case.
 {¶ 47} "Additionally as a result of this conclusion, that we have reached, the State of Ohio has asked permission to re-open the Direct Examination of Ms. Bailey; that is, the State of Ohio has asked permission to ask a few additional questions of Ms. Bailey and I granted that request."
 {¶ 48} We find no abuse of discretion in the court's decision not to grant a mistrial. As indicated by the court, the prosecutor's statements during jury selection and opening arguments were not evidence, and the jury had been specifically instructed to that effect. Griffin has not demonstrated that he would have cross-examined the state's previous witnesses, Gordon and Bailey's mother, differently had the state proceeded under R.C. 2911.11(A)(1) from the beginning of the trial, and the evidence that had been presented up to that time was relevant to aggravated burglary under either R.C. 2911.11(A)(1) or (A)(2). Moreover, the court's instruction was a reasonable means for eliminating any confusion on the part of the jury. Accordingly, we find no basis to conclude that Griffin's substantial rights were adversely affected by the court's decision to permit the state to alter its theory of the case.
 {¶ 49} We likewise find no abuse of discretion in the court's decision to permit the state to reopen its direct examination of Bailey. "The question of opening up a case for the presentation of further testimony is within the sound discretion of the trial court, and the court's action in that regard will not be disturbed on appeal unless under the circumstances it amounted to an abuse of discretion." Columbus v. Grant
(1981), 1 Ohio App.3d 96, 97, 439 N.E.2d 907; see State v. Gaskins,
Seneca App. No. 13-04-12, 2004-Ohio-5427, ¶ 18.
 {¶ 50} In this case, the court did not permit the state to reopen its case; rather, it merely allowed the state to continue its direct examination of Bailey after it had indicated that it had no more questions. At that time, the state had not rested, and Griffin had not yet begun his cross-examination of Bailey. In addition, the court had just permitted the state to proceed under R.C. 2911.11(A)(1). We see no error in the court's decision to allow the state to resume its direct examination.
 {¶ 51} The fourth assignment or error is overruled.
 {¶ 52} V. "The trial court's improper admission of evidence prejudiced appellant's right to a fair trial."
 {¶ 53} In his fifth assignment of error, Griffin argues that the court improperly permitted the back door of Bailey's residence, a stun baton, several photographs, and several knives to be entered into evidence.
 {¶ 54} First, Griffin claims that the back door of Bailey's residence and Bailey's stun baton were inadmissible because the state did not establish a chain of custody. Griffin emphasizes that both the door and the stun baton were not collected from Bailey's residence by the state until shortly before the July 2004 trial, and there was no evidence that the door was in the same or similar condition as on the night of the incident.
 {¶ 55} In State v. Rajchel, Montgomery App. No. 19633, 2003-Ohio-3975, we discussed the state's burden in establishing the chain of custody:
 {¶ 56} "The State has the burden of establishing the chain of custody of a specific piece of evidence. State v. Barzacchini (1994),96 Ohio App.3d 440, 458, 645 N.E.2d 137. `The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' Evid. R. 901(A). In order to meet its burden in establishing the chain of evidence, `the state need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur.' State v.Qualls (June 6, 1997), Clark App. No. 96 CA 68. Breaks in the chain of custody go to the weight afforded the evidence — not the admissibility of the evidence. State v. Jones (Mar. 31, 2000), Miami App. No. 99 CA 38."Rajchel, supra, at ¶ 21.
 {¶ 57} There is no dispute that the back door presented by the state was, in fact, the same door that had been damaged on October 3, 2003. The door was identified by both Gordon and Bailey. Upon questioning by the state, Bailey further testified that the door had hung in the doorway for a while after the incident but that it had been propped up on her back deck — subject to the weather conditions — for a couple of months after the door had been replaced. Bailey agreed that the door was not in its current condition on the night of October 3, 2003, when the door was damaged and photographed by the police. However, the state also presented photographs of the door, taken on October 3, 2003, which demonstrated the condition of the door at that time. In our judgment, the door was properly authenticated by the state and the jury was in a position to evaluate the weight to be given to the door.
 {¶ 58} As with the back door, the state did not collect Bailey's stun baton until two weeks prior to the July 2004 trial. However, Gordon testified that the stun baton presented at trial was Bailey's stun baton. Accordingly, the stun baton was properly authenticated.
 {¶ 59} Next, Griffin claims that the court should not have admitted numerous photographs taken by the evidence technician on October 3, 2003, because the technician was not called to identify them. "The rule is well settled that photographs are not objectionable as long as they are properly identified, are relevant and competent and are accurate representations of the scene which they purport to portray. A picture cannot be admitted without a proper foundation. There must be testimony that the photograph is a fair and accurate representation of that which it represents." Heldman v. Uniroyal, Inc. (1977), 53 Ohio App.2d 21,31, 371 N.E.2d 557.
 {¶ 60} The state authenticated the photographs through the testimonies of Bailey and Gordon. Bailey reviewed state's exhibits 3-16 and identified the photographs of the back door, the bathroom door, the hallway wall, the bathroom floor, the planter, and the deck, virtually all of which showed the damage to her house. She also identified the photograph of a knife on the stairway of her home. Gordon identified several of the photos related to the damage to Bailey's back door and hallway. Based on Bailey's and Gordon's testimony, the photographs were properly admitted by the trial court.
 {¶ 61} Griffin claims that the trial court improperly admitted knives, marked as state's exhibits 20 and 24, because they were neither the knife that Griffin grabbed on October 3, 2003, nor the knife that Bailey's son, Andrew, allegedly threw that night. The court admitted the knives as demonstrative evidence, indicating that they were substantially similar to the knives used during the incident and would "give some perspective to the jury as to what was done or what was being used that night."
 {¶ 62} Demonstrative evidence is admissible if (1) the evidence is relevant, (2) the evidence is substantially similar to the object or occurrence that it is intended to represent, and (3) the evidence does not consume undue time, confuse the issues, or mislead the jury. SeeState v. Palmer, 80 Ohio St.3d 543, 566, 1997-Ohio-312, 687 N.E.2d 685;State v. Jackson (1993), 86 Ohio App.3d 568, 570-71, 621 N.E.2d 710. We review the trial court's ruling for an abuse of discretion. State v.Herring, 94 Ohio St.3d 246, 255, 2002-Ohio-796, 762 N.E.2d 940.
 {¶ 63} In this case, Bailey testified that she had a set of kitchen knives in a butcher block, and Griffin testified that he had grabbed a knife from the kitchen. Trotwood police officer Troy Dexter, who responded to the 911 call, testified that Griffin had been standing in the hallway with a steak knife. He further testified that state's exhibit 20 looked like the knife Griffin had been holding. Specifically, he stated that the knife was the same size and had the same black handle with three steel rivets. Dexter testified that the actual knife used by Griffin had not been collected by the evidence technician. Based on the record, it is apparent that the state's exhibit 20 was relevant, that it was substantially similar to the knife used by Griffin, and that the jury was apprised that the knife was not the actual knife used by Griffin. The court thus properly admitted state's exhibit 20 as demonstrative evidence.
 {¶ 64} Andrew Bailey testified that he went into the kitchen and grabbed a knife from the butcher block upon observing Griffin go into his mother's bedroom and yell at her. Andrew stated that he threw the knife against a wall and that it landed on one of the steps on the front staircase. When presented with state's exhibit 24, Andrew stated that the knife he had was "a little bit smaller" and "a little bit skinnier." However, Officer Dexter testified that the evidence technician collected the knife from the front staircase and identified state's exhibit 24 as that knife. Assuming, arguendo, that state's exhibit 24 was not the actual knife that Andrew grabbed, it was substantially similar to the one he grabbed. We find no abuse of discretion in the court's ruling that state's exhibit 24 was admissible as demonstrative evidence.
 {¶ 65} The fifth assignment of error is overruled.
 {¶ 66} VI. "Appellant's conviction is against the sufficiency and/or manifest weight of the evidence."
 {¶ 67} In his sixth assignment of error, Griffin claims that there was insufficient evidence on the issues of consent and trespass to sustain his conviction and that his conviction was against the manifest weight of the evidence.
 {¶ 68} "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541, citing Black's Law Dictionary (6th Ed. 1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421,430, 1997-Ohio-372, 683 N.E.2d 1096, citing Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal based on insufficient evidence unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 69} In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin,20 Ohio App.3d at 175.
 {¶ 70} As stated supra, Griffin challenges only the state's evidence that he trespassed on Bailey's residence. A person trespasses when he, without privilege to do so, knowingly enters or remains on the land or premises of another. R.C. 2911.21(A). "Privilege" means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).
 {¶ 71} In support of his argument that he was privileged to enter Bailey's home, Griffin emphasizes that Bailey had never denied him entry into her Laguna residence and that he had a number of personal effects, such as a lawnmower, clothing, and a stereo system, at her home. He further notes that he had recently spent the night with Bailey in her master bedroom, that he had visited Bailey at the hospital everyday, and that Bailey had testified that it was not her intention on October 3, 2003, to keep Griffin out of her home.
 {¶ 72} The state presented evidence that Griffin had lived with Bailey and her children for six months on Greenbrook but that he did not move with them to 5010 Laguna Road. Bailey testified that they had a "period of separation" once she moved to Laguna Road. Although Bailey indicated that Griffin was welcome in her Laguna home, he did not have keys to her residence. We agree with the state that it presented sufficient evidence that, although Griffin was a welcome visitor, he did not have a privilege to enter Bailey's home whenever he pleased.
 {¶ 73} The state also provided ample evidence that Griffin lacked a privilege to enter 5010 Laguna Road during the early hours of October 3, 2003. When Griffin arrived, the doors to Bailey's residence were locked. The back door — the door through which Griffin entered — was secured by three locks, all of which were broken when Griffin broke open the door. As noted by the state, Bailey testified that she had previously told Griffin that she did not want him to be with her when Gordon was present. Bailey stated that she had hoped Griffin would leave when she did not answer the door and that she became afraid when Griffin did not leave and both men were at the front door. Bailey also told the 911 dispatcher that her ex-boyfriend was "trying to break into [her] house." Bailey specifically testified that Griffin did not have her permission to enter her home in this manner.
 {¶ 74} Upon review of the record, the state's evidence is sufficient to support the conclusion that Bailey did not consent to Griffin's presence in her house on the night of the incident and that Griffin had trespassed. Moreover, the jury could have reasonably rejected Griffin's contention that Bailey had granted him permission to enter her home at any time. We afford great deference to the factfinder's credibility determinations. See State v. Sherrill (Jan. 28, 2000), Montgomery App. No. 17359; State v. Reed, 155 Ohio App.3d 435, 445, 2003-Ohio-6536,801 N.E.2d 862. Griffin's conviction was neither based on insufficient evidence nor against the manifest weight of the evidence.
 {¶ 75} The sixth assignment of error is overruled.
 {¶ 76} VII. "The trial court erred in providing a misleading response to a question from jurors during deliberations."
 {¶ 77} In his seventh assignment of error, Griffin claims that the trial court provided a misleading response to a jury question regarding his affirmative defense that he had acted in defense of Bailey.
 {¶ 78} During deliberations, the jurors asked: "3. Does Lamar [Griffin] need to prove that Denise [Bailey] was in immediate danger or does he have to prove that he felt she was in immediate danger?" The court responded: "Again, the Defendant, from all the facts and circumstances, must have had reasonable grounds to believe that Ms. Bailey was in immediate danger of bodily harm." Defense counsel objected to the court's answer, arguing that the court should have referred the jury to the instructions that the court had previously given, which stated:
 {¶ 79} "The Defendant also claims to have acted in defense of Denise Bailey. The Defendant had no greater rights than Denise Bailey and was justified in using force not likely to cause death or great bodily harm, only if:
 {¶ 80} "A. Denise Bailey was not at fault in creating the situation, and
 {¶ 81} "B. The defendant had reasonable grounds to believe and the honest belief that Denise Bailey was in immediate danger of bodily harm, and that the only means of protecting her was by the use of force not likely to cause death or great bodily harm. This is an affirmative defense where Mr. Griffin has the burden of proof by the preponderance of the evidence. * * *"
 {¶ 82} Griffin contends that the court's failure to re-instruct the jury that he must have had "reasonable grounds to believe and the honestbelief" that Bailey was in immediate danger could have confused the jury if they compared the court's response to their question with the written jury instructions.
 {¶ 83} "Where, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request."State v. Carter, 72 Ohio St.3d 545, 1995-Ohio-104, 651 N.E.2d 965, paragraph one of the syllabus. A defendant's conviction will not be reversed based upon a trial court's response to such a request absent a showing that the court abused its discretion. Id. at 553.
 {¶ 84} We find no abuse of discretion in the court's response. The jury's question was limited to whether Bailey must have actually been in danger as opposed to Griffin believing that she was in immediate danger. The court's response clarified that actual danger was not required. Although the court's response did not reiterate that Griffin's belief must have been both objectively reasonable and honestly held, the response reasonably answered the limited question posed by the jury.
 {¶ 85} The seventh assignment of error is overruled.
 {¶ 86} VIII. "The trial court erred in permitting the state to replay a 911 tape multiple times during the trial."
 {¶ 87} In Griffin's eighth assignment of error, he argues that the court erroneously permitted the prosecution to replay the 911 tape multiple times during the trial. He contends that "this excessive replaying of the 911 tape was likely to have a highly inflammatory and prejudicial effect on his case."
 {¶ 88} Evid.R. 403(A) provides that relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. "The trial court has broad discretion in balancing the probative value against the danger of unfair prejudice, and its determination will not be disturbed on appeal absent a clear abuse of discretion." State v. Reeves (Mar. 12, 1999), Montgomery App. No. 16987.
 {¶ 89} In this case, the prosecution played a tape recording of Bailey's 911 call during its opening statement, the direct examination of Gordon, the direct examination of Bailey, and the cross-examination of Griffin. With Gordon and Bailey, the state first played the tape in its entirety in order to refresh their memories. The prosecutor then re-played the tape in increments, stopping to ask questions about what they had heard and what was occurring in the house at that time. Defense counsel objected to the state's attempts to replay the tape in increments. The court overruled the objections and permitted the prosecutor to review the 911 call with the witnesses. The state, over objection, again re-played the 911 call incrementally during its cross-examination of Griffin. The prosecution referred to the 911 tape in closing argument without objection.
 {¶ 90} In asserting that its actions were appropriate, the state argues:
 {¶ 91} "Defendant does not dispute that the tape was extremely relevant to the State's case. Ms. Bailey's repeated pleas to the 9-1-1 operator to send the police showed that Defendant was not privileged to enter or remain in her residence, as he had asserted at trial. Additionally, the tape corroborated the witnesses' testimony. The assistant prosecutors were entitled to take the witnesses through the tape to give the jury a clear picture of what was happening. The assistant prosecutors' purpose in playing the tape was not to incite emotion or sympathy. Indeed, the record shows that the tape was played only when it was necessary to assist the jury in evaluating the evidence. Defendant does not demonstrate that any prejudice resulting from the playing of the tape substantially outweighed the tape's significant probative value. Thus, the tape was admissible, and the jury was entitled to play the tape during its deliberations, as urged by the assistant prosecutor in closing argument."
 {¶ 92} The state's argument is borne out by the record. The tape was highly relevant to whether Griffin had trespassed and was not unfairly prejudicial. The state used the tape recording to explore the witnesses' conduct and thoughts during the incident, and its use was reasonably calculated to assist the jury in understanding the sequence of events and in evaluating the evidence. Moreover, because the jury was entitled to replay the tape during deliberations to any extent it desired, any error in the court's permitting the tape to be replayed three times in its entirety and again increments was harmless.
 {¶ 93} The eighth assignment of error is overruled.
 {¶ 94} IX. "The trial court erred in failing to give a proposed jury instruction."
 {¶ 95} In his ninth assignment of error, Griffin asserts that the trial court should have provided a jury instruction on aggravated trespass as a lesser included offense of aggravated burglary.
 {¶ 96} "A trial court must fully and completely give all instructions relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder. State v. Comen (1990), 50 Ohio St.3d 206,553 N.E.2d 640. If under any reasonable view of the evidence, it is possible to find the defendant not guilty of a greater offense with which he is charged and guilty of a lesser offense, the instruction on the lesser offense must be given. State v. Wengatz (1984),14 Ohio App.3d 316, 471 N.E.2d 185. Where the evidence in a criminal case would support a finding by the jury of guilt of a lesser offense included in the offense for which the Defendant was tried, it is prejudicial error for the trial court to refuse a defense request to instruct on the lesser offense. State v. Parra (1980), 61 Ohio St.2d 236,400 N.E.2d 885." State v. Young, Montgomery App. No. 19328, 2003-Ohio-1254, ¶ 9.
 {¶ 97} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988), 40 Ohio St.3d 205,533 N.E.2d 294, paragraph three of the syllabus.
 {¶ 98} Here, Griffin was not entitled to a jury instruction on aggravated trespass, because that offense is not a lesser included offense of aggravated burglary. As stated supra, R.C. 2911.11(A)(1), which defines aggravated burglary, provides:
 {¶ 99} "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]"
 {¶ 100} In contrast, R.C. 2911.211(A), the statute that discusses aggravated trespass, states: "No person shall enter or remain on the land or premises of another with purpose to commit on that land or those premises a misdemeanor, the elements of which involve causing physical harm to another person or causing another person to believe that the offender will cause physical harm to him."
 {¶ 101} An offender can commit aggravated burglary without committing aggravated trespass if he trespasses in another person's habitation without the purpose to commit a misdemeanor. See State v. White (Feb. 9, 2001), Montgomery App. No. 18204. Thus, the trial court correctly concluded that the second prong of Deem was not satisfied and properly overruled Griffin's motion for a jury instruction on aggravated trespass as a lesser offense of aggravated burglary.
 {¶ 102} The ninth assignment or error is overruled.
 {¶ 103} X. "Appellant was deprived of his constitutional right to a fair trial through prosecutorial misconduct."
 {¶ 104} In his tenth assignment of error, Griffin claims that the prosecutors engaged in misconduct when they improperly impeached Bailey, interrupted and led witnesses, misstated the law and evidence, and made improper comments during opening and closing arguments.
 {¶ 105} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Jones,90 Ohio St.3d 403, 420, 2000-Ohio-187, 749 N.E.2d 300, citing State v.Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v. Phillips (1982), 455 U.S. 209, 219,102 S.Ct. 940, 947, 71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See State v. Loza (1994),71 Ohio St.3d 61, 78, 1994-Ohio-409, 641 N.E.2d 1082. In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial. Darden v. Wainwright (1986),477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 106} First, Griffin asserts that the prosecutor improperly impeached Bailey, his own witness, prior to her being declared a court's witness. As noted by the state, Griffin did not specifically object to the prosecutor's cross-examination of Bailey during its direct examination. We also agree with the state that, to the extent that its questioning was erroneous, the prosecutor's conduct was harmless, because he would have been permitted to ask such questions once Bailey had been declared a court's witness.
 {¶ 107} Second, Griffin argues that the prosecutor improperly asked Bailey how Gordon began to act when he learned that "Griffin, an ex-convict, was living with you and his three kids." As noted by the state, the prosecutor committed no misconduct, because this question was asked by Griffin's counsel, not the prosecutor.
 {¶ 108} Third, Griffin complains that the prosecutor repeatedly interrupted and led witnesses. Upon review of the record, Griffin failed to object to many of the questions posed by the prosecutor or to the prosecutor's interruptions. Assuming, arguendo, that the prosecutor acted improperly, we do not find that these instances amounted to plain error. Furthermore, the prosecutor was permitted to ask leading questions of Bailey once she had been designated a court's witness.
 {¶ 109} Moreover, we do not find that Griffin was prejudiced by the prosecutor's conduct. When Griffin objected to the prosecutor's interruptions of Bailey's responses to his questions, the court instructed the prosecutor to allow her to complete her answer and then to follow up. Similarly, when Griffin objected to the prosecutor's leading questions to Officer Dexter and to Bailey, the prosecutor was instructed to rephrase the question, which he did.
 {¶ 110} Next, Griffin asserts that the prosecutor mischaracterized evidence and made improper insinuations on three occasions. First, he presumably challenges the prosecutor's estimation that Beverly Bailey had visited her daughter in the hospital eight to twelve times. We find no basis for reversal in this regard. According to the record, Bailey had surgery on September 29, 2003, and returned home on October 2, 2003. Beverly Bailey testified that she visited her daughter every day, usually twice per day and perhaps more. In our judgment, the prosecutor's estimate was not a gross mischaracterization of Bailey's visits to the hospital.
 {¶ 111} Griffin also asserts that the prosecutor mischaracterized the evidence when he asked Bailey, "But you don't dispute that twenty minutes after the fact and six days later, your story was consistent that: I saw him trying to stab Marvan with the knife?" Upon Griffin's objection being overruled, Bailey responded "Yes, that was my statement, but I'm not real sure if I was as clear then * * *." In addition, when presented with her prior statements to the police and at the preliminary hearing, Bailey admitted that she had stated that Griffin had swung a knife at Gordon. Accordingly, the prosecutor accurately summarized Bailey's prior statements.
 {¶ 112} Finally, Griffin claims that the prosecutor committed misconduct in the course of his closing argument. Generally, prosecutors are entitled to considerable latitude in opening statement and closing argument. State v. Ballew, 76 Ohio St.3d 244, 255, 1996-Ohio-81,667 N.E.2d 369; State v. Stevens, Montgomery App. No. 19572, 2003-Ohio-6249, ¶ 34. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990), 51 Ohio St.3d 160, 165,555 N.E.2d 293, quoting State v. Stephens (1970), 24 Ohio St.2d 76, 82,263 N.E.2d 773. "Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced."Stevens, supra, citing Ballew, supra, and State v. Lorraine (1993),66 Ohio St.3d 414, 420, 613 N.E.2d 212.
 {¶ 113} Griffin challenges the prosecutor's statement during closing argument that Gordon had said that he had received cuts on his hand "because I was having to defend myself against this man." Griffin argues that Gordon testified that he did not know how he had sustained the cuts. Although Gordon did not know how he had become injured, he testified that he did not have cuts on his hands prior to his altercation with Griffin on October 3, 2003. Accordingly, the prosecutor could reasonably argue that Gordon sustained the injuries to his hand during his fight with Griffin at Bailey's residence.
 {¶ 114} Griffin argues the prosecutor misstated the law with respect to assault when he stated "if you start a fight and at the end of that fight the person you started the fight with has cuts on his hands, you've assaulted him." As stated in the court's jury instruction, causation for purposes of assault is "an act which in a natural and continuance sequence directly produces physical harm, and without which it would not have occurred." Although not artfully stated, the prosecutor's argument correctly suggested that Griffin had committed assault if his actions proximately caused Gordon's injuries. Although Griffin emphasizes that Gordon did not know if Griffin had cut him with the knife, Gordon indicated that he did not have injuries to his hands prior to the fight and that he had injuries to his hands subsequent to the altercation with Griffin. We do not find the prosecutor's statements to be erroneous or prejudicial.
 {¶ 115} Griffin also challenges the prosecutor's statement that Griffin knew Gordon would be at the house when he arrived. The prosecutor stated: "Mr. Griffin knew Marvan Gordon was gonna be at that residence. He'd had a conversation at the hospital with Beverly." We agree that the evidence does not support the state's inference that Griffin knew that Gordon would be at Bailey's home on the night of October 2, 2003. Bailey testified that she did not tell Griffin that Gordon would be staying at her home on the night in question. According to Beverly Bailey, she had informed Griffin that Gordon would be staying at Bailey's home with the children while Bailey was in the hospital.
 {¶ 116} Although the evidence suggested that Griffin knew Gordon would be staying with the children until Bailey returned home and not afterward, we do not find the prosecutor's misstatement to be prejudicial. The jury was instructed prior to the presentation of closing arguments that counsels' statements were not evidence and were merely "what they believe the evidence over the last couple of days has in fact shown." Moreover, Griffin's counsel began his argument stating, "[f]irst of all, Mr. Griffin did not know that Marvan Gordon was at the house the night ** Denise Bailey came home from the hospital." Upon viewing the closing arguments in their entirety, we do not find that the prosecutor's misstatement was prejudicial.
 {¶ 117} Finally, Griffin asserts that the prosecutor improperly commented upon Griffin's credibility and the validity of his defense. He also claims that the prosecutor improperly vouched for Gordon's credibility.
 {¶ 118} "When making a closing argument, a prosecutor should not express his personal belief or opinion on the credibility of a witness or regarding the guilt of the defendant or allude to matters which are not supported by admissible evidence. * * * Although a prosecutor may not give his personal opinion about the credibility of witnesses, the prosecutor may comment fairly on the credibility of witnesses based on their in-court testimony, or may even suggest to a jury that the evidence demonstrated that the witness was lying. State v. Carpenter (1996),116 Ohio App.3d 615, 624, 688 N.E.2d 1090; State v. Mundy (1994),99 Ohio App.3d 275, 304, 650 N.E.2d 502; State v. Gunn (Aug. 7, 1998), Montgomery App. No. 16617." State v. Jones, Montgomery App. No. 18789, 2002-Ohio-1780.
 {¶ 119} During closing arguments, the prosecutor stated:
 {¶ 120} "Remember, the Defendant's defense is: `I did all that stuff but I'm justified. And I'm justified and I'm gonna tell you why and you're gonna accept my word over their word.'
 {¶ 121} "But his word isn't worth anything. He's lyin'. And this little four- and a half dollar lock and that photograph, that thankfully Officer Baldridge did take, tells us it conclusively. And you weigh all this stuff, you've got the convicted felon who's obviously lying and you have the people whose actions are tellin' ya' they're afraid. And you go back there and tell us what happened on October 3rd."
 {¶ 122} The prosecutor later stated that "we all know [that defense of others] is a bogus defense in this case." Griffin also complains that the prosecutor stated in opening argument that "we know" that an aggravated burglary occurred.
 {¶ 123} Although the prosecutor clearly commented on Griffin's credibility and the validity of his defense, the prosecutor based its opinions on the evidence presented during the trial. He previously compared Griffin's version of how he had entered the back door with the evidence that the locks had been engaged on the back door and that the door could not have been open for Griffin "to put his shoulder into" to open it. The prosecutor further discussed the evidence which demonstrated that there was no need for Bailey to be protected from Gordon on the night of the incident. Because the prosecutor's comments were based upon a reasonable summary of the evidence presented, we cannot find that the prosecutor's comments regarding Griffin's credibility or the validity of his defense were improper.
 {¶ 124} We also do not find that the prosecutor's comments regarding the credibility of Gordon's testimony were prejudicial. The prosecutor's statement merely emphasized that Gordon did not accuse Griffin of cutting his hands with the knife.
 {¶ 125} The tenth assignment of error is overruled.
 {¶ 126} XI. "The cumulative effect of the errors occurring at trial deprived appellant of a fair trial."
 {¶ 127} Under Griffin's eleventh assignment of error, he argues that the cumulative weight of the errors denied him a fair trial. We have identified very few even arguable errors, and those that we have identified were clearly not prejudicial to Griffin. Such errors cannot form the basis of a reversal based upon cumulative error.
 {¶ 128} The eleventh assignment of error is overruled.
 {¶ 129} The judgment of the trial court will be affirmed.
Fain, J. and Grady, J., concur.
[1] The parties have not indicated how self-defense is relevant to a charge of aggravated burglary, in light of the fact that Griffin was acquitted of felonious assault. We assume that self-defense was not mooted by Griffin's acquittal because the state has asserted that Griffin trespassed on Bailey's residence with the purpose of committing an assault and either inflicted or attempted to inflict harm on another, i.e., Marvan Gordon.