OPINION *Page 2 
{¶ 1} Defendant-Appellant Brandon D. Rosvanis ("Rosvanis") appeals from the November 16, 2006 Judgment Entry of the Court of Common Pleas of Wyandot County, Ohio, sentencing him to three years in prison for his convictions of Felonious Assault, a felony of the second degree in violation of Ohio Revised Code section 2903.11(A)(2) and Assault, a misdemeanor of the first degree in violation of R.C. 2903.13(A)[1], 12 months in prison for his conviction of Breaking and Entering, a felony of the fifth degree in violation of R.C. 2911.13(B), and 6 months in jail for his conviction of Aggravated Menacing, a misdemeanor of the first degree in violation of R.C. 2903.21(A).
 {¶ 2} This matter stems from events occurring on May 2, 2006 in Upper Sandusky, Ohio. On this date, the alleged victim, Kendra Holman ("Kendra") was on the telephone inside her home located at 612 Pleasantview Street in Upper Sandusky. A man, later identified as Rosvanis, knocked on Kendra's door and announced himself as a friend of a Mr. Hardwick who had been present at a party at Kendra's house two days prior. Rosvanis began asking Kendra about a fight that had occurred at the party wherein Hardwick was injured. Kendra and *Page 3 
Rosvanis began arguing while standing on the porch. When Kendra told Rosvanis that he needed to leave, he responded, "I'll show you I'm not playing." Rosvanis took his forearm and slammed Kendra up against the front door. Rosvanis then pulled out a handgun, pointed it at Kendra, and struck her just below her eye with the butt of the gun. Kendra shoved Rosvanis and he stumbled backward, then picked up a flower pot and threw it at Kendra, missing her but hitting the house. Rosvanis then left Kendra's house and ran towards the street, yelling that he would be back and that he was going to kill her.
 {¶ 3} On July 19, 2006 a Wyandot Grand Jury indicted Rosvanis on one count of Felonious Assault in violation of R.C. 2903.11(A)(2), one count of Assault in violation of R.C. 2903.13(A), one count of Breaking and Entering in violation of R.C. 2911.13(B), and one count of Aggravated Menacing in violation of R.C. 2903.21(A)[2]. At his arraignment on July 27, 2006 Rosvanis entered a plea of not guilty to all charges contained in the indictment. The trial court released Rosvanis on bond with the condition that he have no contact with the victim in this case.
 {¶ 4} This matter proceeded to a jury trial commencing October 3, 2006. *Page 4 
 {¶ 5} At the close of all of the evidence the jury found Rosvanis guilty of Felonious Assault, Assault, Breaking and Entering and Aggravated Menacing as contained in the indictment, but returned a verdict of not guilty on the charge of Tampering with Evidence as charged in the bill of information. The court continued this matter for sentencing, pending the filing of a pre-sentence investigation report.
 {¶ 6} On November 15, 2006 the trial court conducted Rosvanis' sentencing hearing. The trial court sentenced Rosvanis to three years in prison for his convictions of Felonious Assault and Assault which were merged for purposes of sentencing, 12 months in prison for his conviction of Breaking and Entering, and 6 months in jail for his conviction of Aggravated Menacing. The trial court ordered that the sentences for Breaking and Entering and Aggravated Menacing were to be served concurrently with one another and concurrently with the three year sentence imposed for Felonious Assault and Assault. The trial court granted Rosvanis credit for 64 days served.
 {¶ 7} Rosvanis now appeals, asserting one assignment of error.
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN PERMITTING THE USE OF A HAND GUN ASDEMONSTRATIVE EVIDENCE.
 {¶ 8} In his sole assignment of error, Rosvanis claims that the trial court erred and abused its discretion by permitting the State to use a handgun as *Page 5 
demonstrative evidence when the handgun shown to the jury was not substantially similar to the one allegedly used in the commission of the crime at issue in the present case.
 {¶ 9} "Demonstrative evidence is admissible if (1) the evidence is relevant, (2) the evidence is substantially similar to the object or occurrence that it is intended to represent, and (3) the evidence does not consume undue time, confuse the issues, or mislead the jury."State v. Griffin, 2nd Dist. No. 20681, 2005-Ohio-3698
citing State v. Palmer (1997), 80 Ohio St.3d 543, 687 N.E.2d 685. The admission of experimental or demonstrative evidence is within the discretion of the trial court. State v. Jackson (1993),86 Ohio App.3d 568, 570, 621 N.E.2d 710. Thus, a trial court's ruling on demonstrative exhibit is reviewed under the abuse of discretion standard. State v.Griffin, 2005-Ohio-3698 at ¶ 62; see also State v. Herring (2002),94 Ohio St.3d 246, 255, 762 N.E.2d 940. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 10} In the present case, the police were unable to recover the actual gun used by Rosvanis in connection with his assault on Kendra. Accordingly, for *Page 6 
demonstrative purposes and to help the jury understand the testimony presented, the State sought to introduce a handgun that was substantially similar to the handgun that was allegedly used by Rosvanis.
 {¶ 11} Prior to introducing the demonstrative handgun, the State presented the testimony of Kendra Holman. Kendra testified that after Rosvanis slammed her up against the front door, he pulled out a gun, pointed it at her eye, and then hit her on the cheek bone with the butt of the gun. Kendra described the gun as an all black semiautomatic gun with a pitch black barrel.
 {¶ 12} The State also presented the testimony of Lieutenant Eric Parks ("Parks") of the Upper Sandusky Police Department who testified regarding his investigation of this incident. Parks testified that his investigation revealed that a "Hi-Point .380" handgun, manufactured in Dayton, Ohio, was the gun allegedly used in the attack on Kendra Holman. Parks testified that the gun was a black, semiautomatic handgun, and that the sighting mechanism on this particular type of gun is orange on the front sight.
 {¶ 13} Additionally, the State presented the testimony of Zack Cortad ("Cortad") who testified that he and Rosvanis were living together in an apartment located at 336 Henderson Street in Upper Sandusky on May 2, 2006. Cortad testified that he drove Rosvanis to Kendra's house, but remained in the car when Rosvanis approached the house. Cortad testified that he heard Kendra yell "[g]et *Page 7 
your friend out of here! He's got a gun." Cortad testified that although Rosvanis left the scene in a car driven by his girlfriend, he met up with Rosvanis at their apartment. Cortad testified that while at the apartment he asked Rosvanis what had happened and Rosvanis replied that he scared her (Kendra) and that he had to hide the gun. Cortad testified that Rosvanis hid the gun in the garage in a part of the ceiling that was broken out.
 {¶ 14} The trial court also questioned Cortad about the gun. Cortad admitted that he did not see the gun at all on the day of the incident, but saw it "just to get it out of the garage to take it out of there because it was just laying up there in the garage." When asked by the court how he knew that was the gun that was used, Cortad testified "well, he [Rosvanis] told me."
 {¶ 15} Cortad also testified that he got a good look at the gun and stated that it was a semiautomatic Hi-Point. 380 with a black grip and an orange sight on it. Additionally, Cortad testified that the gun was eventually sold to Luke Chapman and that he had first-hand knowledge of that sale.
 {¶ 16} Specifically regarding State's Exhibit 15, the Hi-Point .380 to be used as demonstrative evidence, the following exchange occurred between counsel for the State and Cortad:[3]
 Q: Mr. Cortad, I show you what's been marked as State's Exhibit 15. I ask you to handle it to look at it. Is State's Exhibit *Page 8 
 15 substantially similar to the handgun that you retrieved from the garage on — that, was later sold to Luke Chapman?
 A: Yes.
 Q: Is there anything distinctive about State's Exhibit 15 that leads you to that testimony?
 A: The whole thing.
 Q: The whole thing?
 A: Yes.
 Q: Including the orange sight in the front?
 A: Yes.
(Transcript of October 3-4, 2006 Jury Trial, ("Tr.") p. 186).
 {¶ 17} Additionally, on re-direct examination, the following exchange occurred between counsel for the State and Cortad:
 Q: Mr. Cortad, you told this jury that you retrieved a gun from the garage at 336 West Henderson, is that correct?
 A: Yes, it is.
 Q: That's a gun that you saw the defendant place in the garage?
 A: Yes.
 Q: I'll show you what's been marked as State's Exhibit 15. Would you tell us what State's 15 looks like?
 A: It looks identical to the gun that I retrieved from the garage.
 Q: Make, model and caliber?
 A: Yes.
 Q: And does it have the orange sight on it?
 A: Yes it does.
(Tr. pp. 189-190).
 {¶ 18} Finally, the State presented the testimony of Austin Crevaston who testified that he had previously seen Rosvanis in the possession of a handgun. Specifically, Crevaston testified that he saw Rosvanis in the possession of a "Hi- *Page 9 
Point .380" that looked exactly the same as the State's Exhibit 15, within one year of the date of the present incident.
 {¶ 19} Although Rosvanis concedes that the introduction of the gun for demonstrative purposes in this case did not consume undue time or confuse the issues, he argues that the presence of a gun used only for demonstrative purposes and that cannot be tied directly to the incident in question misleads the jury and inflames it against Rosvanis. We find this argument to be without merit.
 {¶ 20} First, we note that the State presented extensive testimony to establish that the handgun used as demonstrative evidence was both relevant and substantially similar to the one used in the commission of the crimes at issue in the present case pursuant to State v.Griffin, supra. Second, we note that prior to ruling on the State's request for admission of the handgun for demonstrative evidence purposes, the trial court specifically recessed for the purpose of reviewing State v. Griffin, supra. The trial court then stated it had "reviewed and Shepardized Griffin" and ruled that "the spec (sic) gun as proffered will be allowed as demonstrative evidence." (Tr. p. 187). Finally, we note that the jury was given a limiting instruction regarding the handgun as demonstrative evidence wherein the trial court stated as follows:
 A number of exhibits and testimony related to them have been introduce[d]. You will determine what weight, if any, the exhibit should receive in light of all the other evidence. State's Exhibit 15 has been admitted into evidence but it has been limited — *Page 10 admitted for a limited purpose only. State's witnesses testified that it's similar to the gun that was allegedly used in this case. It's not the alleged gun that was allegedly used. It is being admitted simply because of a similar (sic) in size, shape, color and weight according to witnesses and it is to be considered for that limited purpose only. It is only for demonstrative purpose that would explain to you when it was . . . testified to by the witnesses who identified the weapon.
(Tr. p. 312).
 {¶ 21} As the trial court was in the best position to observe the demeanor and assess the credibility of the witnesses who testified regarding the handgun, we find that the trial court's evidentiary ruling on the introduction of a handgun for demonstrative purposes was not unreasonable, arbitrary, or unconscionable. Therefore, we find that the trial court did not abuse its discretion by permitting the State to use a handgun as demonstrative evidence. Rosvanis' sole assignment of error is overruled.
 {¶ 22} Accordingly, the November 16, 2006 Judgment Entry of the Wyandot County Court of Common Pleas, sentencing Rosvanis to three years in *Page 11 
prison for his convictions of Felonious Assault, Assault, Breaking and Entering, and Aggravated Menacing is affirmed.
Judgment affirmed
 ROGERS, P.J., and WILLAMOWSKI, J., concur.
[1] The offenses of Felonious Assault and Assault were merged for purposes of sentencing.
[2] Rosvanis was also charged on a bill of information with Tampering with Evidence, a felony of the third degree in violation of R.C.2921.12(A)(1) in case no. 06-CR-0050. At the hearing on Rosvanis' motion to suppress, the State requested that case no. 06-CR-0050 be consolidated with the present case (case no. 06-CR-0039). The trial court granted the State's request, consolidated the two cases, and ordering that both cases would proceed to trial pursuant to the schedule set in case no. 06-CR-0039. (See September 25, 2006 Judgment Entry).
[3] We note that this exchange acted at the State's proffer for State's Exhibit 15 and that the court accepted said proffer. (Tr. p. 186). *Page 1