481

**STATE, Plaintiff-Appellee, v. FARRELL, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22415. Decided May 5, 1952.

Frank T. Cullitan, County Pros., Harvey R. Monck, Asst. County Pros., Cleveland, for plaintiff-appellee.

Corrigan, McMahon & Corrigan, Wm. J. Corrigan, of counsel, A. D. Adelstein, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, PJ.

This appeal comes to this Court on questions of law from a judgment for the State finding the defendant guilty of

murder in the second degree. The Court, on hearing a motion for new trial, reduced the degree of guilt to first degree manslaughter. The defendant was the owner of the "Ebony Lounge" variously described as a night club or cafe, located at East 69th & Cedar Avenue in the City of Cleveland. The deceased was an employee of defendant, his work being that of door man at the Ebony Lounge and ticket taker and assistant in operating "dawn dances" which were promoted by the defendant.

The entrance to the Ebony Lounge was in the center of the building. A masonite partition was constructed to the left of the entrance door which extended south about six feet where it met another partition extending west some distance. There was an opening about one foot square on the first described partition, the bottom of which was about fifty-three inches above the floor in which opening a shelf was constructed of masonite which was about nine inches wide and fastened solidly to the bottom of said opening. The opening was used as the means of selling entrance tickets to patrons. The check room was located back of this partition. There were two bars, one on either side of the main room, and a stage on the back wall for the use of a dance band and entertainers.

On the early morning of June 24, 1951, the defendant at about 3 o'clock A. M., came to the ticket window to get the money that had been taken for tickets. His wife, who was the ticket seller on this occasion, was seated back of the partition. The deceased was in the entrance way acting as door man. There was some conversation between the defendant and the deceased, the defendant claiming that the deceased was discussing with him the merits of two revolvers, one of which was a thirty-two caliber, American double action revolver, the other a Smith & Weston 38 caliber revolver. During the course of the conversation, the defendant testified that the deceased asked "Do you have the little cheap gun?" and upon answering "Yes" the defendant reached in his hip pocket, took therefrom the gun, laid it on the ledge (the shelf above described) and as he did so it exploded and fell to the floor. The discharged bullet hit the deceased from the effect of which he died a few hours thereafter.

The defendant claims the follows errors:

1. That the court committed error prejudicial to the rights of defendant in submitting to the jury the charge of murder in the second degree.

2. In receiving into evidence testimony of a ballistic expert

as to experiments made with the revolver from which the bullet was discharged that caused the death of Thomas.

3. In failing to charge on circumstantial evidence.

4. That the judgment is not supported by the evidence.

As above indicated, there is no conflict in the evidence concerning the cause of the death of Harry Thomas. His death was the proximate result of a bullet shot from a revolver which the defendant had in his hand at the time of or just prior to the shooting. It was the claim of the state, by the allegations of the indictment, that the defendant shot purposely to cause the death of Harry Thomas. The defense was that the discharge of the gun was an accident.

There is evidence in the record in support of both theories. On behalf of the state it was shown that the defendant was taken to the bedside of the deceased, where the deceased was asked to identify him as the one who fired the shot. The record is as follows:

"Q. In the presence of Farrell and Thomas, what, if anything, did you say?

"A. I said to Thomas, 'Is this the man that shot you?' and he says, 'yes.' He turns toward Farrell and he says, 'you shot me for nothing.' He said, 'if I ever get out I'll kill you.' Farrell in turn says, 'it was an accident.'

"Q. Then what happened, what was said next?

"A. The victim said, 'It wasn't an accident, he shot me for nothing,' again he repeated it."

The record also discloses that the revolver involved was an "American Double Action" which was constructed in such a way that the only way it could be fired was by pulling the trigger through a full firing cycle which operation required about sixteen pounds pressure on the trigger. The firing mechanism could not be cocked back in firing position. The gun could not be fired by "brushing the trigger." The shell from which the bullet was expelled that killed Thomas was indented by the firing pin in the same manner and depth as was true of experimental shots subsequently fired.

It was also demonstrated that the powder mark and bullet mark, which the firing of the gun and the bullet that killed Thomas made on the shelf where the defendant said he put the gun before it exploded, could not be made in the place as found after the shooting, if the gun was laid on the shelf in the manner as described by the defendant, it is also to be noted that the defendant's wife who was within two feet of the place where the defendant was standing when the shot was fired was not called as a witness.

The defendant's case consisted for the most part of his

declaration that the gun was discharged accidentally as or when he put it on the shelf. One officer testified that the defendant told him that as he laid the gun on the counter it went off and that he did not know whether his finger accidentally brushed the trigger or whether the gun had cocked itself when he took it out of his pocket. Another officer testified that the defendant said he slammed it down on the ledge. He also introduced a number of credible character witnesses who testified that the defendant is a business man of good repute in the community.

The defendant's claim of error in the admission of expert testimony of experiments made to demonstrate that the markings on the ledge could not result from a discharge of the gun as claimed by the defendant, is not well taken. The rule in Ohio as to the admissibility of such evidence is stated in **Vol. 17, O. Jur., parag. 479, page 587** as follows:

"The general rule is that to render experiments or evidence of experiments made out of court, admissible, the conditions need not be identical with those existing at the time of the occurrence in question; it is sufficent if there is substantial similarity. The Ohio courts accord with this general rule. But obviously, the probative value of experiments will depend upon the correspondence of the conditions under which they are performed to those of the occurrence being investigated. If there be an exact correspondence of such conditions, the experiment will amount to a demonstration and be conclusive upon the issue; dissimilarity of conditions and experiments may affect not merely the weight of the evidence but its admissibility. Evidence as to the results of an experiment with the same kind of a train, at the same place and with a similar crew, is not controlling if the conditions are not shown to be exactly the same."

The evidence here received of experimental shots made by the ballistic expert comes clearly within the permissible limits of the rule as thus stated.

The claimed error in the charge of the court cannot be supported. It is contended by the defendant that a charge on circumstantial evidence should have been given. It must be noted that the defendant did not request such a charge, although the opportunity to request any correction or addition was afforded him. In any event, the evidence upon which the state relied to make out its case was direct and not circumstantial and the omission of a charge on circumstantial evidence could in no way prejudice the defendant.

We also find that the verdict, as modified by the court, cannot be said to be against the manifest weight of the evi-

dence. The jury is the sole judge of the credit to be given to the testimony of the several witnesses and there is no basis upon which to claim that they acted under passion and prejudice. The court cannot substitute its judgment on questions of fact for that of the jury where there is credible evidence to support the verdict.

For the foregoing reasons, the judgment is affirmed. Exceptions noted. Order see journal.

HURD, J, THOMPSON, J, concur.