The STATE of Ohio, Appellee

v.

JACKSON, Appellant.

[Cite as *State v. Jackson* (1993), 86 Ohio App.3d 568.]

Court of Appeals of Ohio,
Clark County.

No. 2956.

Decided Feb. 26, 1993.

*Richard P. Carey,* Clark County Assistant Prosecuting Attorney, for appellee.

*Albert Stewart, Jr.,* for appellant.

BROGAN, Judge.

Roger Jackson appeals from his conviction of aggravated robbery and robbery in the Clark County Court of Common Pleas.

The facts of this case are as follows. On March 14, 1992, two armed men wearing panty hose or stockings pulled over their heads robbed the Pizza Hut restaurant located on East Main Street in Springfield, Ohio. Several Pizza Hut employees witnessed the robbery and later identified Roger Jackson and Everett Clark as the perpetrators. Both men were arrested and indicted on one count of aggravated robbery pursuant to R.C. 2911.01 with a firearm specification, and one count of robbery pursuant to R.C. 2911.02 with a firearm specification. A joint trial was held before a jury on May 26, 27, and 28, 1992.

During the trial, the state produced a pair of nylon stockings marked as state's Exhibit A specifically for demonstrative purposes. At the conclusion of the state's case, the trial court permitted, over objection, the state to conduct a demonstration using Exhibit A as a mask over an individual's head in order to show the resulting distortion of facial features.

Counsel for both defendants objected, on the basis that the demonstration was inflammatory due to conflicting testimony regarding the color, type, and size of the stockings, as well questions as to the lighting conditions at the time of the robbery.

The court acknowledged that the demonstration would not be identical with respect to the aforementioned conditions, but nevertheless allowed the demonstration, stating that "the jury may well discount the demonstration as not being an accurate representation of what took place at the time, but I think it has some benefit *for the jury to weigh* and consider this question of identification which seems to be a central issue on the case."   (Emphasis added.)

On May 28, 1992, Jackson was convicted on both counts and was sentenced to three years' actual incarceration for the firearm specification to be served consecutively with and prior to the minimum term of ten years to maximum term of twenty-five years on the other counts.  The judgment entry was filed on June 3, 1992.  Jackson filed this appeal on June 23, 1992.

In his sole assignment of error, Jackson asserts that the trial court abused its discretion by allowing the state to enter into evidence the stocking used in the demonstration.  Specifically, Jackson asserts that the stocking was introduced into evidence without laying a proper foundation pursuant to Evid.R. 901(A). Evid.R. 901(A) provides that:

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

We find Evid.R. 901(A) inapplicable to the exhibit at issue as the state did *not* claim that Exhibit A was the stocking used in the robbery.  Rather, the state introduced the stocking as part of a demonstration to illustrate the extent to which a stocking worn over one's head would distort facial features.

In Ohio, the admission of experimental or demonstrative evidence is within the discretion of the trial court.  *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 566 N.E.2d 154; *Leichtamer v. Am. Motors Corp.* (1981), 67 Ohio St.2d 456, 473, 21 O.O.3d 285, 296, 424 N.E.2d 568, 580; *Wood v. Gen. Elec. Co.* (1953), 159 Ohio St. 273, 50 O.O. 286, 112 N.E.2d 8.  Absent an abuse of discretion, reviewing courts will not interfere with the trial court's decision.  *Vogel, supra; St. Paul Fire & Marine Ins. Co. v. Baltimore & Ohio RR. Co.* (1935), 129 Ohio St. 401, 405–406, 2 O.O. 396, 398–399, 195 N.E. 861, 864.

The question of admissibility as it is affected by the dissimilarity of conditions between the experiment and the actual event is also within the trial court's discretion.  *State v. Bates* (1976), 48 Ohio St.2d 315, 2 O.O.3d 453, 358 N.E.2d 584; *Wood, supra.*  "The general rule is that to render experiments * * *

admissible, the conditions need not be identical with those existing at the time of the occurrence in question; it is sufficient if there is substantial similarity." *State v. Farrell* (App.1952), 64 Ohio Law Abs. 481, 112 N.E.2d 408.

■ In determining whether an experiment with conditions dissimilar to the actual event should be admitted, Ohio courts have considered various factors, such as whether the experiment was offered to recreate the incident, and whether the dissimilarities were emphasized. *Leichtamer, supra; Kingham v. Gypsum Interiors, Inc.* (Sept. 24, 1991), Montgomery App. No. 11780, unreported, 1991 WL 214246. These courts have generally held that any dissimilarities go to the weight of the evidence rather than its admissibility.

■ We find useful the tripartite test applied in *DiRosario v. Havens* (1988), 196 Cal.App.3d 1224, 242 Cal.Rptr. 423. This test permits admissibility of demonstrative evidence only if (1) the experiment is relevant, (2) the experiment is conducted under substantially similar conditions as those of the actual occurrence, and (3) the evidence of the experiment does not consume undue time, confuse the issues, or mislead the jury.

With respect to the first prong of the test, relevance is defined in Evid.R. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

■ The evidence is this case was presented for purely demonstrative purposes, *i.e.*, to show the distortion caused by using a stocking as a facial mask. As the identification of the robbers was a key issue in this case, this demonstration was indeed relevant to test the reliability of witnesses purporting to have identified the perpetrators who wore stockings over their faces during the robbery.

As for the second prong, *i.e.*, whether the experiment was conducted under substantially similar conditions as those of the actual occurrence, several witnesses testified that a similar stocking was worn by Jackson during the robbery. While the shade and size of the actual stocking worn by the appellant may have differed from Exhibit A, the general effect of the use of a stocking as a mask was substantially similar.

Finally, regarding the third prong, requiring that the experiment not consume undue time, confuse the issues, or mislead the jury, it is undisputed that the state did not assert that Exhibit A was the actual pair of stockings worn by Jackson. The state presented the demonstration to the jury as follows: "At this time the Court has permitted us to demonstrate briefly to you what *could be* the effects of stockings over an individual's face." (Emphasis added.) When shown Exhibit A,

Melissa Byerly, the manager on duty at the time of the robbery, testified as follows:

"Q. *Just for demonstrative purposes,* I'll hand you what's been marked as State's Exhibit A. How does this exhibit compare to the nylon panty hose which you saw over this person's face?

"A. It wasn't a hole in it but it was just like this. It was just, went straight over the top of his head to his neck right here.

"Q. Now, did that distort his face such that you could not make out the actual facial characteristics?

"A. It smashed his nose and that was it.

" * * *

"Q. Okay. You mentioned these hose here, are these your hose?

"A. No.

"Q. Do you know who provided these? They weren't provided by you, is that correct?

"A. No.

"Q. You say these are the exact type of hose that were put over the man you saw in the restaurant?

"A. I don't know if they were stockings like that. They could have been plain panty hose with one leg cut off because it couldn't covered [*sic*] the top of the head to neck.

"Q. You don't know if they were full length?

"A. There was nothing hanging where the head was in one leg and the the [*sic*] other leg was hanging out, no.

"Q. You don't know whether they were thigh length, whether they were knee length, whether they were hip length?

"A. No, just his head to his neck.

"Q. And that's all you saw?

"A. Yeah.

"Q. You're certain that they were this color?

"A. No, they could have been a little bit darker." (Emphasis added.)

The testimony of Shawn Crable, another Pizza Hut employee, similarly revealed that Exhibit A was not the stocking worn by Jackson.

"Q. You've referred to panty hose on both their faces, is that right?

"A. Yeah.

"Q. Could you describe what color these panty hose were?

"A. Like a tan color, skin color maybe.

"Q. Were they both legs of panty hose or single leg or do you recall?

"A. Didn't really recall that.

"Q. Okay. *I'm going to show you what's been marked as State's Exhibit A and this is a particular color of panty hose, although the style might be different than what you saw.* Would this be about the color that you recall that night?

"A. Yes." (Emphasis added.)

Based on the this testimony we find that the state clearly established that the panty hose used in the demonstration was not the actual hose worn by Jackson. Further, the testimony clearly revealed that certain questions remained regarding the actual shade and size of the hose worn by Jackson, and that it may have differed in both these characteristics. Therefore, we do not find that the demonstration conducted by the state misled, confused, or diverted the jury so as to prejudice the purposes of the trial.

For the foregoing reasons, we find that the trial court did not abuse its discretion in allowing the state to conduct the demonstration. Therefore, the appellant's assignment of error is overruled.

The judgment of the Clark County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

WOLFF and FREDERICK N. YOUNG, JJ., concur.