[Cite as *State v. Norton*, 2016-Ohio-1123.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 103048

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**YVON E. NORTON**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-586742-A

**BEFORE:**   Blackmon, J., Keough, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**   March 17, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

By: Jeffrey M. Gamso
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Mahmoud S. Awadallah
Assistant County Prosecutor
9th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

**{¶1}** Yvon Norton ("Norton") appeals his conviction for attempted rape and the court's denial of his motion for a new trial. Norton assigns the following errors for our review:

I. The trial court committed error when it denied Mr. Norton's motion for new trial out of hand and without holding a hearing.

II. Insofar as counsel failed to cite the compulsory process clause of the Sixth Amendment and the concomitant right to present a defense in support of the motion for new trial, Mr. Norton was denied the effective assistance of counsel which he is guaranteed by the Sixth and Fourteenth Amendments and by Section 10, Article I of the Ohio Constitution.

III. The evidence presented is insufficient as a matter of law to support the guilty verdict and Mr. Norton's conviction on Count 2, attempted rape, and the evidence also proves the affirmative defense of abandonment.

IV. Mr. Norton received ineffective assistance of counsel, in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, when his attorney failed to request that the jury be instructed on the affirmative defense of abandonment as to the charge of attempted rape in Count 2 of the indictment.

**{¶2}** Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

**{¶3}** At approximately 12:45 a.m. on June 16, 2014, as M.G.[1] was driving home, she noticed a car at the stop sign on E. 146th Street and Bartlett Avenue. The car did not move, so M.G. made a left-hand turn and parked on Hampstead Avenue in front of her house. According to M.G., the car from the stop sign had followed her. As M.G. exited her vehicle, the driver of the other car pulled up beside her, pointed a gun at her through the window, and said, "Get in or I'm going to kill you."

**{¶4}** The male made a "clicking" sound with the gun, and M.G. got into his car. The male told M.G. to turn off her phone. He then drove around the corner, said to M.G., "You

---

[1]Pursuant to this court's policy, sexual abuse victims are not identified by their names in opinions.

going to suck this dick," and parked his car. With the gun still pointed at her, the male forced M.G.'s head down into his lap and made her perform oral sex on him. M.G. resisted, but she could feel the gun pointed at the back of her head. The male said she "better not tell anybody" or he would kill her. The male put his other hand inside her shirt and groped her breast. Next, the male said, "Now you going to give me some pussy." M.G. responded, "No, I'm on my period," although this statement was not true.

{¶5} The male told M.G. to get out of the car, reached across her, opened the passenger door, and "forcefully pushed" her with the gun still in his hand. M.G. fell out of the car and onto the tree lawn. As she looked up, the car was leaving and she got the license plate number. M.G. had her car keys but realized that she did not have her phone. M.G. went back to her car and drove herself to the police station. She arrived between 1:15 and 1:30 a.m., reported the incident, and was then transported to the hospital.

{¶6} An investigation led to Norton's arrest, and he was charged with various offenses based on M.G.'s allegations. On February 20, 2015, a jury found Norton guilty of rape in violation of R.C. 2907.02(A)(2); attempted rape in violation of R.C. 2923.02 and 2907.02(A)(2); gross sexual imposition in violation of R.C. 2907.05(A)(1); two counts of kidnapping in violation of R.C. 2905.01(A)(2) and (4); and intimidation of a crime victim or witness in violation of R.C. 2921.04(B)(1).

{¶7} Norton filed a motion for a new trial, which the court denied. Subsequently, the court sentenced Norton to an aggregate of five years in prison.

**Motion for a New Trial**

**{¶8}** Pursuant to Crim.R. 33(A), it is within the court's discretion to grant a defendant a new trial if any of the following, pertinent to the case at hand, materially affect the defendant's substantial rights:

> (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial; * * *
> (3) Accident or surprise which ordinary prudence could not have guarded against.

**{¶9}** Furthermore, "[i]t is also within the discretion of the trial court to determine whether a motion for new trial and the material submitted with the motion warrants an evidentiary hearing." *State v. Newton*, 10th Dist. Franklin No. 14AP-920, 2015-Ohio-1972, ¶ 9.

**{¶10}** In Norton's motion for a new trial, he argues that he

> should have the benefit of a new trial due to this inability to put on a meaningful defense by virtue of the Court's refusal to allow testimony on certain subjects, exclusion of two fact witnesses, and the Court's denial of a brief continuance of several minutes to await the arrival of three tardy witnesses on the final day of trial.

Norton specifically identified his "meaningful defense" theory as follows: "that M.G. fabricated the rape accusation after Norton inadvertently drove off with her cell phone."

**{¶11}** In support of this argument, Norton offers six affidavits: two from potential defense witnesses whose testimony the court ruled inadmissible; three from potential defense witnesses who did not testify because the court denied defense counsel's request for a continuance; and one from a defense witness whose testimony the court limited.

Testimony Inadmissible

**{¶12}** Norton's sister was prepared to testify that she drove to the East 146th Street and Bartlett Avenue intersection and parked her car at the stop sign where M.G. allegedly first noticed Norton on the night in question. Norton's sister's affidavit states that she could not see

into the interior of any approaching vehicle. According to defense counsel, this testimony would have shown that "Norton was neither following M.G. nor did he have an opportunity to see M.G. in her vehicle" before their encounter. Norton argues that this testimony was admissible as an observation.

{¶13} An attorney named Justin Smith was prepared to testify that he timed the drive from East 146th Street and Hampstead Avenue to the Cleveland Police Department's Fourth District station, which is the same route M.G. drove to file her police report. Smith made the drive twice, and it took five-and-a-half and six-and-a-half minutes, respectively. According to defense counsel, Smith's testimony would have challenged M.G.'s testimony that the drive took her approximately ten minutes. Norton argues that he was "trying to undermine M.G.'s version of events by showing that there was up to a 30-minute gap in her story — time that M.G. could have used to fabricate her rape accusation."

{¶14} However, the court ruled these two witnesses' testimony inadmissible, stating the following: "That's not general lay witness testimony. * * * That's conducting a test with the other side not present, not having the opportunity to examine the circumstances under which the test is performed."

{¶15} If a witness' "testimony reports the result of a procedure, test, or experiment," it is categorized as expert witness testimony. Evid.R. 702(C). Nothing in the record suggests that Norton's sister or Smith were prepared to testify as expert witnesses.

{¶16} Opinion or inference testimony offered by lay witnesses is limited by Evid.R. 701 and must be "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." In the case at

hand, neither Norton's sister nor attorney Smith observed or perceived the incident at issue; therefore, their testimony is not admissible under Evid.R. 701.

{¶17} An admissible form of demonstrative evidence may involve an experiment offered to recreate an incident relevant to a material issue at trial. These "demonstrations" are conducted in the courtroom in front of the jury, which was not the situation in the case at hand. *See State v. Jackson*, 86 Ohio App.3d 568, 621 N.E.2d 710 (2d Dist. 1993).

Continuance Denied

{¶18} Norton's friend Darren Jackson was prepared to testify that Norton was at Jackson's house on the night in question to discuss automobile speakers. Norton and Jackson smoked marijuana, and Norton left "sometime after midnight." Jackson was with Norton the next day to purchase speakers. Norton was in "good spirits" on both occasions.

{¶19} Norton's recruiter from the Ohio Army National Guard was prepared to testify about the prohibitions against drug use in the military and possible punishment, including a dishonorable discharge.

{¶20} According to defense counsel, the testimony from these two witnesses would have been used to show why Norton initially lied to the police about his whereabouts on the night in question.

{¶21} Norton's ex-girlfriend was prepared to testify that when she dated Norton, in the spring of 2014, she knew him to keep a handgun in the center console of his vehicle for what he referred to as "personal protection." Norton argues this testimony would have supported "an inference that he did not have the gun in his possession * * * for any criminal purpose — least of all rape."

**{¶22}** All three of these potential witnesses were scheduled to testify on February 19, 2015, at 9:00 a.m. Defense counsel requested a ten-minute continuance, because all three witnesses were delayed due to the cold weather and associated slow-down in traffic. The court denied the continuance, and the defense rested over objection. It is undisputed that the weather was unusually cold that day, and all three potential witnesses stated via affidavit that they allowed additional travel time that morning, anticipating weather-related delays.

**{¶23}** The granting or denial of a continuance is within the discretion of the trial court. *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Factors to consider are as follows:

> [t]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

**{¶24}** In the instant case, the length of the delay requested was ten minutes. Furthermore, court adjourned early the previous day because of a ruling that Norton's next two scheduled witnesses' testimony was inadmissible. The requested delay was weather related, and there is nothing to suggest that Norton contributed to the three witnesses' tardiness. Although the requested continuance was brief, "this court must weigh concerns such as the trial court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice against any potential prejudice to a defendant." *State v. Malcolm*, 8th Dist. Cuyahoga No. 50846, 1987 Ohio App. LEXIS 9416 (Oct. 29, 1987).

Testimony Limited

**{¶25}** Sedric Daniels's affidavit states that he was prepared to testify that Norton told him, on the night in question, he planned to go to Darren Jackson's house to discuss speakers for Norton's car. The court ruled this testimony inadmissible as hearsay. Norton argues that the proposed testimony was admissible under Evid.R. 803(3), which is the "state of mind" exception to the rule against hearsay and renders admissible statements about the declarant's intent or plan. *See State v. O'Neal*, 87 Ohio St.3d 402, 411-412, 721 N.E.2d 73 (2000).

**{¶26}** "Under Evid.R. 803(3), statements of current intent to take future actions are admissible for the inference that the intended act was performed." *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 99. Norton argues that he told Daniels of his intent to go to Jackson's and he did, in fact, go to Jackson's. According to Norton, this is relevant because it "[a]ccounted for [his] whereabouts and attitude in the hours leading up to the encounter with" M.G.

**{¶27}** Prior to sentencing Norton, the court summarily denied from the bench Norton's motion for a new trial. Norton's motion for new trial is not based on newly discovered evidence. Rather, the gist of Norton's argument is that the court abused its discretion regarding the admissibility of evidence, the testimony of witnesses, and the denial of a continuance. Upon review, we find that the testimony at issue does not involve eyewitnesses, alibis, or any other exculpatory evidence. Norton's argument that he was denied his right to present a defense or that the court's rulings materially affected his substantial rights is not compelling. We cannot say that the court's decisions were unreasonable, arbitrary, or unconscionable, and Norton's first assigned error is overruled.

## Sufficiency of the Evidence

**{¶28}** Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of the evidence require the same analysis. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶29}** The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

**{¶30}** In addition to M.G.'s testimony, the following testimony was presented at trial.

**{¶31}** On the morning of June 16, 2014, Cleveland Police responded to a call about a sexual assault suspect at E. 145th Street and Kinsman Road, which is less than a mile from M.G.'s house. The suspect identified himself as Norton. Norton's vehicle, a tan Chevy, was parked in plain view and he was standing in the street, wearing khaki camouflage pants and Timberland boots. With Norton's permission, the police searched his car. Cleveland Police testified that Norton's car was clean and they did not find a cell phone or a firearm in the vehicle.

**{¶32}** Norton denied knowing anything about a sexual assault and stated that he had been at his mom's washing clothes and was now watching a movie at his girlfriend's house. Norton

denied meeting with or seeing another female that night. He told the police he worked full time as a security guard and served as military police for the National Guard. Norton denied owning a gun. At the time, the police did not have a description of the suspect other than information about a vehicle, including a license plate number. The police spoke with Norton's girlfriend, who corroborated his story. The police left the scene without arresting Norton or seizing any evidence.

{¶33} On June 18, 2014, M.G. identified Norton from a photo lineup as the man who sexually assaulted her. On June 20, 2014, Norton's tan Chevy Malibu with license plate number FYE7*** was towed from a military base in Newton Falls, Ohio. Also, on June 20, 2014, Norton was arrested. Subsequently, Norton's vehicle was searched at the police tow lot, and a silver handgun was recovered from the center console.

{¶34} Cleveland Police Detective Michael Moctezuma testified that on June 20, 2014, he interviewed Norton. Norton admitted to seeing M.G. sometime between 10:00 and 11:00 p.m. on the night in question and stated that M.G. performed consensual oral sex on him in his car. He denied having a firearm with him at the time and denied that M.G. left her phone in his car. However, later in the interview, Norton admitted that M.G. left her phone in his car. Norton voluntarily gave the police a DNA sample.

{¶35} The lab results from the testing of the recovered firearm and M.G.'s rape kit were negative for the presence of Norton's DNA.

{¶36} Norton's argument under this assigned error concerns his conviction for attempted rape, which was based on M.G.'s testimony about attempted vaginal penetration. R.C. 2907.02(A)(2) states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

Additionally, R.C. 2923.02 governs criminal attempt, and the pertinent subsections are as follows:

> (A) No person, purposely or knowingly, * * * shall engage in conduct that, if successful, would constitute or result in the offense.
> * * *
> (D) It is an affirmative defense to charge under this section that the actor abandoned the actor's effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of the actor's criminal purpose.

{¶37} Norton argues that the evidence was insufficient to satisfy section (A) of the attempt statute. The evidence is M.G.'s testimony that, while Norton had a gun to her head and was forcing her to perform oral sex on him, he told her to give him "some pussy." We conclude that this evidence is sufficient to show attempted rape.

{¶38} Norton's next argument is that the evidence "clearly proves the affirmative defense of Section (D), abandonment." Although this argument concerns the weight, rather than the sufficiency, of the evidence, our analysis follows.

{¶39} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the

evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶40} An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id.*

{¶41} The evidence in the record is M.G.'s testimony that after she told Norton she was menstruating, he ordered and forced her out of the car, thus "abandoning" his "effort to commit" vaginal rape. The fact that Norton left the scene without completing the act of vaginal rape does not necessarily mean he voluntarily abandoned his criminal purpose. This court has held that "when an offender forms an intent to perform an act and then takes a substantial step toward the act, the offender may not argue that he has abandoned the act as an affirmative defense." *State v. Bowyer*, 8th Dist. Cuyahoga No. 88014, 2007-Ohio-719, ¶ 15. The evidence does not suggest that Norton voluntarily renounced his course of action. Rather, he forced M.G. out of the car

under the mistaken impression that she was menstruating. We do not find this scenario to be the type of fact pattern that shows the affirmative defense of abandonment. Accordingly, Norton's third assigned error is overruled.

## Ineffective Assistance of Counsel

**{¶42}** To succeed on a claim of ineffective assistance of counsel, a defendant must establish that his or her attorney's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* at 697. *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 3743 (1989).

**{¶43}** Norton's argument here is twofold. First, in his second assigned error, he argues that counsel was ineffective because he failed to cite Norton's Sixth Amendment right to compulsory process in his motion for a new trial. However, the trial court is presumed to know the law. *State v. Jones*, 1st Dist. Hamilton No. C-970043, 1998 Ohio App. LEXIS 3938, (Aug. 28, 1998). In Norton's motion for a new trial, defense counsel argued multiple grounds for a new trial and supported the argument with relevant legal authority including the Fifth and Seventh Amendments to the United States Constitution. Failure to also cite to the Sixth Amendment does not amount to ineffective assistance of counsel. Norton's second assigned error is overruled.

**{¶44}** Second, in Norton's fourth and final assigned error, he argues that counsel was ineffective for failing to request a jury instruction on the affirmative defense of abandonment.

In our analysis of Norton's third assigned error, we found that this affirmative defense was not applicable to the facts of this case. Therefore, we cannot say that counsel was ineffective for failing to request a jury instruction concerning this theory. Norton's fourth assigned error is overruled.

{¶45} Norton's convictions and the judgment of the court are affirmed. It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN T. GALLAGHER, J., CONCUR