[Cite as *State v. Davison*, 2021-Ohio-4184.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| TAJIE J. BOUNDS DAVISON, | : | Case No. 2021 CA 0014 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County
                            Court of Common Pleas, Case No.
                            2020-CR-0249

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            November 24, 2021

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

GARY BISHOP                             WILLIAM T. CRAMER
Prosecuting Attorney                    470 Olde Worthington Road, Suite 200
Richland County, Ohio                   Westerville, Ohio 44902

By: JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Baldwin, P.J.*

**{¶1}** Appellant, Tajie J. Bounds Davison, appeals the jury's verdict finding him guilty of aggravated burglary in violation of R.C. 2911.11(A)(1), a first degree felony; robbery in violation of R.C. 2911.02(A)(2), a second degree felony; and disrupting public services in violation of R.C. 2909.04(A)(1), a fourth degree felony.

## STATEMENT OF FACTS AND THE CASE

**{¶2}** Erica Vaughn attended the celebration of the life of Terrence Harris held at the home of Diamond Bounds, friend of Vaughn and mother of one of the deceased's children. Appellant, Tajie Bounds Davison, Diamond's cousin, was at the celebration as was Mariah Nusbaum, mother of one of Bounds Davison's children. The celebration began in the afternoon on April 9, 2020, continued late into the evening and was attended by twenty to thirty adults and children. Diamond provided food cooked on a grill, and, as the celebration continued the adults began drinking.

**{¶3}** Vaughn was drinking but felt comfortable leaving the party just before midnight. She arrived at her apartment and noticed that Tyrese Patrick had left his car in her garage. She parked her car in the drive way, went inside, began changing her clothes and called her mother. Moments later she heard a noise in the garage, so she closed her bedroom door. When she did not hear any further noises, she opened her bedroom door and discovered someone standing on the other side. She recognized the silhouette as Bounds Davison and without a word he hit her in the face and she fell to the floor. He stomped on her chest more than once and she crawled into the bathroom and closed the door. She looked for her phone, but realized it was still in the bedroom. She pulled out her car keys and then heard Bounds Davison say "Give me my keys." She told him she

did not have his keys and he demanded that she give him his keys, warning that she had "three seconds to give me my keys." Bounds Davison counted to three, kicked the door in, grabbed Vaughn's hair and kicked her in the head twice. He dragged her around the apartment and then kicked her again. Once they were outside he released her as Tyrese Patrick drove into the driveway.

{¶4} Vaughn ran to Patrick's car and asked to use his phone as Bounds Davison ran off. Vaughn called her mother and told her that Bounds Davison had assaulted her and her mother told her that she would be right there. Vaughn's mother, Patricia Clark, was talking with Vaughn's aunt, Christina Jones, when Vaughn called. Clark put Jones on hold and answered her daughter's call. Once she learned what had happened, she told Jones and left for her daughter's house, only minutes from her home. Jones followed and called 911. The police appeared shortly thereafter to talk with Vaughn.

{¶5} Vaughn was bloody, crying, visibly upset and suffering from the physical attack. When the police appeared, they photographed her injuries and the blood on the bathroom floor and made arrangements for her treatment. Vaughn told the police who had attacked her after she arrived at the hospital. Later, she and her family discovered that her phone and keys were missing.

{¶6} Bounds Davison was charged with aggravated burglary, R.C. 2911.11(A)(1); robbery, R.C. 2911.02(A)(2); and disrupting public services, R.C. 2909.04(A)(1). At trial, Bounds Davison did not dispute that Vaughn had suffered the attack described, but claimed that the state did not prove that he was the perpetrator. He offered the testimony of Mariah Nusbaum and Diamond Bounds, as well as two videos in support of his argument.

{¶7}   Diamond Bounds is Bounds Davison's cousin and they have a very close relationship.  She hosted the party on April 9, 2020 and recalls that Vaughn left about midnight and Bounds Davison and the remaining guests left around 1:00 a.m.  During cross examination, she conceded that her house was a seven to ten minute drive from Vaughn's residence.

{¶8}   Mariah Nusbaum is the mother of one of Bounds Davison's children, friend of Diamond Bounds and former co-worker of Vaughn. She attended the party at Diamond's house and recalls that she left at around 1:00 a.m.  She claims that Bounds Davison drove her home because she was too drunk to drive.  When she arrived home she promptly fell asleep and does not know whether Bounds Davison stayed at her home. He was present in the morning at 10:00 a.m., but she later accused him of leaving and going to Vaughn's home to have sex with her the previous night.

{¶9}   The police came to Nusbaum's home the day after the party looking for Bounds Davison.  He hid in the closet while Nusbaum denied he was in her home.  She claims that after she was told why they were looking for him, she admitted he was present and Bounds Davison was arrested.  As a result of this encounter, Nusbaum was charged with a felony offense, found guilty and conceded she was on probation for that charge when she testified at the trial sub judice.

{¶10} Bounds Davison's counsel submitted two short videos during Nusbaum's direct examination, purportedly showing Bounds Davison at the party at midnight and 12:30 a.m.  Nusbaum claimed that she received the videos from friends and forwarded them to Bounds Davison's attorney without modification. Nusbaum confirmed that the videos appear to have been taken at Diamond Bounds' home during the party, but she

could provide no further information about the content, including whether the date and time reflected on the videos were accurate.  She identified the persons who provided the videos, but neither person testified.

{¶11}  During cross examination, Nusbaum conceded that one of the times could be read as 3:00 a.m. rather than 12: 30 a.m.  One of the videos also featured the word "cuz" and an image of fingers crossed with a blue heart, both of which Nusbaum contended were added with the program which was used to create the videos, Snapchat. While looking at the video that has a time of either 12:30 a.m. or 3:00 a.m., Nusbaum volunteered that "the time and date that you're looking at is a Snapchat filter." (Trial Transcript, page 327, lines 24-25).

{¶12}  The prosecutor then used his personal phone in conjunction with his cross examination of Nusbaum.  He asked Nusbaum to choose a number between 1 and 5 and, after Nusbaum replied "five" he asked Deputy Nedrow to hold up five fingers.  He took a photograph with his phone and had Nusbaum confirm that the photo showed Deputy Nedrow sitting next to him holding up five fingers. The prosecutor next had the following exchange with Nusbaum:

Q. Now, using Snapchat, you can apply all sorts of things. Right?

A.      Yes.

Q. I could put 12, 15, I could also put that this took place on, let's see, 4/9/20. Right?

A.      Yes.

Q. I could put 12:15, 4/9/20. Does that appear to be what I put on there?

A.      Yes.

(Trial Transcript, page 329, lines 6-14).

{¶13} The prosecutor had the image on his phone printed and during cross examination of Nusbaum asked her to identify it and confirm that the day and time show 4/9/20 at 12:15 even though that was not the correct date. She also conceded that she could not verify when the videos that she has relayed to defense counsel were made. The prosecutor concluded that "So for all they're worth, they're really worth just about nothing. Right?" and Nusbaum replied "yes." (Transcript, p. 350, lines 16-18).

{¶14} Nusbaum also admitted that she had a telephone conversation with Bounds Davison while he was incarcerated prior to trial. The conversation was recorded and played for the jury. The content of the conversation could be reasonably interpreted as an attempt to persuade Nusbaum to testify contrary to her recollection of the facts and that she was prepared to commit perjury. The state contended that the recording contained Nusbaum's statement that she "would come down and lie for you." The state played the recording several times and increased the volume, but Nusbaum denied that she said "and lie" but only said that she would "come down there for you." (Transcript, p. 347, lines 4-5).

{¶15} The jury returned a guilty verdict on all counts. Bounds Davison filed a timely appeal and submitted three assignments of error:

{¶16} "I. THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO PRESENT DEMONSTRATIVE EVIDENCE ON HOW TO ALTER TIME STAMPS ON SNAPCHAT WITHOUT SUPPORTING TESTIMONY."

**{¶17}** "II. APPELLANT'S FEDERAL AND STATE RIGHTS TO DUE PROCESS WERE VIOLATED BY INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILING TO PROPERLY OBJECT TO THE PHOTOGRAPHIC DEMONSTRATION."

**{¶18}** "III. APPELLANT'S CONVICTIONS FOR AGGRAVATED BURGLARY AND ROBBERY, AND THE GUILTY FINDING ON DISRUPTING PUBLIC SERVICES, WERE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE."

**ANALYSIS**

**I.**

**{¶19}** Bounds Davison claims the trial court erred in allowing the prosecution to present demonstrative evidence on how to alter time stamps on Snapchat without supporting testimony in his first assignment of error. Bounds Davison did not object to the prosecutor's actions nor did he object to the display of the resulting photograph to the jury, so we are limited to reviewing the record for plain error.

**{¶20}** Crim. R. 52(B) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. *State v. Hill*, 92 Ohio St.3d 191, 200, 749 N.E.2d 274, 283 (2001) (observing that the "first condition to be met in noticing plain error is that there must be error"), citing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), (interpreting Crim.R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b]). Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. *State v.*

*Sanders*, 92 Ohio St.3d 245, 257, 750 N.E.2d 90, 111, (2001), citing   *State v. Keith*, 79 Ohio St.3d 514, 518, 684 N.E.2d 47 (1997); see, also, *Olano*, *supra*  at 734 (a plain error under Fed.R. Crim.P. 52[b] is " 'clear' or, equivalently, 'obvious' " under current law). Third, the error must have affected "substantial rights." The Supreme Court has interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. See, e.g*., Hill, supra*  at 205; *State v. Moreland,* 50 Ohio St.3d 58, 62, 552 N.E.2d 894(1990); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph two of the syllabus.

{¶21}  Even if a forfeited error satisfies these three prongs, Crim.R. 52(B) does not demand an appellate court correct it. Crim.R. 52(B) states only that a reviewing court "may" notice plain forfeited errors; a court is not obliged to correct them. The Supreme Court of Ohio has acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."   *State v. Long, supra*, paragraph three of the syllabus; see, also,   *Olano,    supra,* at 736 (suggesting that appellate courts correct a plain error "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," quoting *United States v. Atkinson* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)).

{¶22}  Bounds Davison's assignment complains that the prosecution presented demonstrative evidence regarding alteration of a time stamp on Snapchat and that assignment and argument within the brief suggests that the prosecutor completed the presentation without presenting sworn testimony.   We find Bounds Davison's characterization of the record materially incomplete.

**{¶23}** First, the reference to "alteration of a time stamp" is misleading, as there is no testimony that the video reflected an accurate time stamp. Nusbaum testified that she did not alter the video but she could not verify the date or time that it was taken and she admitted without prompting that one date was a "Snapchat filter." (Transcript, p. 327, lines 24-25). Nusbaum identified the creators of the videos, but neither testified. We find that the prosecutor did not demonstrate the alteration of a time stamp on Snapchat, but confirmed that a false date and time could be added to the recording.

**{¶24}** The prosecutor questioned Nusbaum while he took a photograph and added the date and time and she agreed that Snapchat could be used to add the date and time to a recorded image. We find that admission by Nusbaum potentially more damaging to Bound Davison's case than the prosecutor's actions and note that he did not object to her response and does not now contend that allowing that statement by her was error. In the context of this case, the actions of the prosecutor taking the photograph and adding a date and time merely serve to demonstrate what the sworn witness has confirmed is possible when using the Snapchat application. Times, dates and other images, such as the crossed fingers, blue heart and the text "cuz" can be added by the user at any time.

**{¶25}** Demonstrative evidence is admissible if (1) the evidence is relevant, (2) the evidence is substantially similar to the object or occurrence that it is intended to represent, and (3) the evidence does not consume undue time, confuse the issues, or mislead the jury. See *State v. Palmer,* 80 Ohio St.3d 543, 566, 1997–Ohio–312, 687 N.E.2d 685; *State v. Jackson,* 86 Ohio App.3d 568, 570–71, 621 N.E.2d 710 (2nd. Dist. 1993) as quoted in *State v. Griffin*, 2nd Dist. Montgomery No. 20681, 2005-Ohio-3698, ¶ 62. The

accuracy of date and time that the videos were created is relevant and the evidence was not time consuming, misleading or confusing. The product of the prosecutor's actions, in conjunction with Nusbaum's admission that Snapchat could be used to insert a false date, provided sufficient basis to support a conclusion that the evidence was substantially similar to the dated video images submitted by Bounds Davison.

**{¶26}** We acknowledge that Bounds Davison objected to the admission of Exhibit 8, the photograph created by the state during the cross-examination of Nusbaum. This objection was made after the photograph had been published to the jury, after defense had rested and the state had presented rebuttal evidence, and outside the presence of the jury. Bounds Davison complained that the photograph was not made with Snapchat. The trial court found the exhibit was relevant to the argument regarding "how things can be done on phones." (Transcript. p. 395, lines, 23-25).

**{¶27}** We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62, citing *State v. Issa,* 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). Thus, our inquiry is limited to determining whether the trial court acted unreasonably, arbitrarily or unconscionably in deciding the evidentiary issues. *State v. Barnes,* 94 Ohio St.3d 21, 23, 759 N.E.2d 1240 (2002).

**{¶28}** We find no prejudice in this instance and cannot say that the trial court abused its discretion in allowing the photograph to be admitted after it had been published to the jury without an objection. *State v. Wilson*, 8th Dist. Cuyahoga No. 104333, 2017-Ohio-2980, ¶ 41.

{¶29} We find that the record lacks any evidence of an obvious defect in the trial and therefor deny the first assignment of error.

II.

{¶30} In his second assignment of error, Bounds Davison claims his federal and state rights to due process were violated by ineffective assistance of counsel in failing to properly object to the photographic demonstration. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome."   *Strickland* at 694.

{¶31} We have concluded that trial court's decision to permit the prosecutor's questioning of the witness during the creation of the dated photograph to demonstrate the ability to add a date to a Snapchat image was not plain error, so we are constrained to find that the failure to object to that testimony did not amount to ineffective assistance of counsel.  Instead, we believe the decision to not object can be viewed as a trial strategy, chosen by counsel to avoid bringing attention to the lack of evidence or testimony to verify the time and date the videos were created and that, despite the fact that the party was attended by as many as thirty guests, only Bounds Davison's cousin and the mother of his one year old son appeared to testify about the time that he left the party.  We cannot

conclude that counsel's decision to forego objecting to the prosecutor's presentation was not a carefully considered trial strategy and "[w]e will not second-guess the strategic decisions counsel made at trial even though appellate counsel now argue that they would have defended differently." *State v. Post*, 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987) as cited in *State v. Mason*, 82 Ohio St.3d 144, 169, 1998-Ohio-370, 694 N.E.2d 932 (1998).

**{¶32}** Bounds Davison's second assignment of error is overruled.

### III.

**{¶33}** Bounds Davison contends that the convictions for aggravated burglary and robbery, and the guilty finding on disrupting public services, were not supported by the weight of the evidence in his third assignment of error. He does not contend that the offenses did not occur, but only that the weight of the evidence did not support a conclusion that he committed the offenses.

**{¶34}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶35}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159. *State v. Schoeneman,* 5th Dist. Stark No. 2017CA00049, 2017-Ohio-7472, ¶¶ 21-23.

**{¶36}** Bounds Davison focuses his argument on the credibility of the witnesses, claiming that the victim was less than credible and that two witnesses and the videos presented a "solid alibi." Generally, the credibility of witnesses is an issue for the trier of fact and the jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig (*Mar. 23, 2000), Franklin App. No. 99AP–739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09–1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, Franklin App. No. 02AP–604, 2003–Ohio–958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke,* Franklin App. No. 02AP1238, 2003–Ohio–2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096.

**{¶37}** Bounds Davison contends the witnesses and evidence supporting his contention that he remained at the party until after the assault occurred should be given greater weight than Vaughn's identification of Bounds Davison as his attacker. The jury

was free to decide that Diamond Bounds, Bounds Davison's cousin and one of his witnesses, was not to be believed due to her close relationship with him.  The jury was also free to discount her testimony when any one of the other thirty guests of the party could have testified as well.

**{¶38}**  As noted above, the video was brought into question during the testimony of Mariah Nusbaum, when she agreed that any date could be inserted into an image when using Snapchat.  And the fact that she lied regarding Bounds Davison's presence in her home when questioned by police and later had a conversation with him that could be interpreted as a discussion regarding what she should say when she testifies supplies grounds for a juror to view her testimony as unworthy of belief.

**{¶39}**  After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the conviction. The jury did not create a manifest injustice by concluding that appellant was guilty of the crime charged in the indictment.

**{¶40}**  Davison Bounds third assignment of error is denied.

**{¶41}** The decision of the Richland County Court of Common Pleas is affirmed.

By: Baldwin, P.J.

Gwin, J. and

Wise, John, J. concur.